IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| Freddy Ludwig Wambach, | ) | C/A No.: 1:09-1784-HFF-SVH |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| Warden Larry W. Powers, Lt. Priglims, Lt. Hayes, and J. Hensley, | ) | |
| Defendants. | ) | |

Plaintiff, who is proceeding *pro se* in this action, is an inmate at Spartanburg County Detention Center ("SCDC"). Plaintiff has asserted claims under 28 U.S.C. § 1983, alleging various claims of violations of his constitutional rights.

Before the court are the following motions: (1) Defendant Hensley's Motion for Summary Judgment [Entry #69]; and (2) Defendants Hayes, Powers, and Priglims's (collectively "SCDC Defendants") Motion for Summary Judgment [Entry #72]. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of Local Civil Rule 73.02(B)(2)(d) (D.S.C.). Because the motions for summary judgment are dispositive motions, this Report and Recommendation is entered for review by the district judge.

I. Factual and Procedural Background

Plaintiff filed his complaint in this action on July 7, 2009, and amended his complaint on July 9, 2009. Defendant Hensley filed a motion for summary judgment on

November 5, 2009, and SCDC Defendants filed their motion for summary judgment on November 9, 2009. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Defendants' Motions. [Entry #70 and #74]. Plaintiff filed responses in opposition to Defendants' Motions. [Entry #82 and #95]. Having carefully considered the parties' submissions and the record in this case, the court recommends Defendants' motions for summary judgment be granted.

In his complaint, Plaintiff first alleges that his Fourth and Fourteenth Amendment rights were violated by Defendant Hensley's allegedly unreasonable search and seizure and false arrest. Specifically, Plaintiff alleges that on May 24, 2009,[1] he was arrested by Defendant on a public drunk charge, for which Plaintiff claims Hensley lacked probable cause. Plaintiff also claims that he does not drink. Plaintiff also alleges Defendant conducted an illegal search and seizure of Plaintiff's car at the time of his arrest.

According to Defendant Hensley, he was dispatched to an address located at the Norris Ridge Apartments in the City of Spartanburg in reference to an intoxicated subject wearing jeans and a white shirt[2] in the parking lot of the apartment complex. (*See* Hensley Aff. at #69-2). Hensley was further advised by dispatch, via an unidentified caller at the

---

[1] Although Plaintiff's complaint alleges the date of the arrest was June 24, 2009, the record demonstrates that Plaintiff has been detained in the SCDC since May 24, 2009. Thus, Plaintiff's date appears to be in error.

[2] Plaintiff claims that he was wearing black pants and a white shirt, so that he did not match the description Hensley was dispatched to find.

apartment complex, that the subject was a black male and had a weapon. (*Id*.) Upon arrival at the dispatched address, Hensley observed an individual matching the description provided by dispatch attempting to get into a green Volkswagen Passat with North Carolina tags, and upon questioning the individual identified him as Plaintiff. (*Id*.) According to Defendant Hensley, in the course of his communication with Plaintiff, Hensley observed Plaintiff to be unsteady on his feet, his speech was slurred, and he had a strong smell of alcohol on his person and breath. (*Id*.) Officer Hensley placed Plaintiff under arrest for Public Drunk in violation of the City of Spartanburg Municipal Ordinance 13-56. (*Id*.)

Defendant Hensley attests that, subsequent to the arrest, he patted down Plaintiff. As Plaintiff's keys to the vehicle could not be located and thereby secured at its location in the parking lot, a towing service was contacted and an inventory search of Plaintiff's vehicle was initiated pursuant to City of Spartanburg Public Safety Department procedure and protocol. (*Id*.) A Motor Vehicle Tow & Inventory Report was prepared by one of Officer Hensley's fellow officers following the inventory search, and Hensley transported Plaintiff to the Spartanburg County Detention Center for booking. (*Id*.) On May 28, 2009, Spartanburg Municipal Court Judge Smith heard Plaintiff's charge of Public Drunk from the bench and dismissed the charge. (*Id*.)

Plaintiff also complains that SCDC Defendants violated his First and Eight Amendment rights by using excessive force against him while detained, by "stopping" his grievances and mail to family members, and for failure to provide legal resources.

Specifically, Plaintiff claims SCDC Defendants used excessive force against him on three occasions by pepper-spraying him for failure to clean his cell. Plaintiff also claims that "unknown officers" beat him on June 15, 2009 for failure to clean his cell. In addition, Plaintiff complains that SCDC Defendants Pilgrim and Hayes threw his grievances and mail to family in the trash. Finally, Plaintiff also complains that he does not have access to a law library or legal resources.

Defendants provide additional information giving rise to the three incidents where Plaintiff was pepper-sprayed. According to Defendants and the records provided, the incidents arose out of Plaintiff's repeated offense of "painting" the walls and ceiling of his room with his own feces. (*See* Powers Aff. at Entry #73-1 and attachments to the same). First, on June 13, 2009, Plaintiff smeared feces throughout his cell. Defendant Pilgrim went to Plaintiff's cell with cleaning supplies and gave Plaintiff repeated directives to clean his cell. (*Id.*) Plaintiff refused. Pilgrim periodically checked on Plaintiff's progress, but Plaintiff continued to be belligerent and noncompliant. (*Id.*) On the morning of June 14, 2009, Pilgrim returned to Plaintiff's cell, and discovered that Plaintiff had not begun cleaning, as he had repeatedly been ordered. (*Id.*) Pilgrim gave Plaintiff several further directives to clean his cell, and Plaintiff repeatedly refused. (*Id.*) Pilgrim responded by administering a short burst of pepper spray. When Pilgrim turned to leave, Plaintiff lunged at him from his bunk, and Pilgrim administered an additional burst of pepper spray. (*Id.*) During the incident Plaintiff made numerous threats, including threatening to repeat his behavior, to kill the President of the United States, and to kill

people at the detention facility. (*Id.*) Plaintiff was thereafter decontaminated, and transported to Spartanburg Regional Medical Center for further evaluation. (*Id.*) He sustained no injuries and was returned to his cell, which had been cleaned and disinfected. (*Id.*)

Two days later, on June 15, 2009, at approximately 8:00 a.m., Plaintiff was discovered in his cell, again with feces smeared all over the walls and ceiling. (*Id.*) Again, Plaintiff refused repeated directives to clean up the mess he had made. Pilgrim administered a short burst of pepper spray; Plaintiff was decontaminated and taken, once again, to Spartanburg Regional for evaluation, which revealed no injuries. (*Id.*) His cell was once again cleaned and decontaminated. (*Id.*) Later that same day, at approximately 9:25 p.m., Plaintiff once again defiled his living area with feces. (*Id.*) Defendant Hayes made numerous requests for Plaintiff to clean his cell, but he refused, taunting Hayes to "go ahead and spray me." (*Id.*) After extended efforts to obtain compliance, Hayes administered a short burst of pepper spray to Plaintiff. (*Id.*) Plaintiff was decontaminated and taken to Spartanburg Regional, where he was found to have no injuries. (*Id.*)

II.  Standard of Review

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *see also Haines v. Kerner*, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does

not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim. *Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir. 1990). Nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e); *see also Celotex v. Catrett*, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. *See* Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the *Celotex* case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. *Celotex*, 477 U.S. at 322–323.

III.  Analysis

    A.    Claims against Defendant Hensley

        1.    Arrest of Plaintiff

Under Supreme Court precedent, "a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "The Fourth Amendment is not violated by an arrest based on probable cause." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Probable cause exists if the "facts and circumstances within the officer's knowledge ... are sufficient to warrant a prudent person ... in the circumstances shown, [to conclude] that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37, (1979). "The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." *Id.* at 36.

"In assessing the existence of probable cause, courts examine the totality of the circumstances known to the officer at the time of the arrest." *Taylor v. Waters*, 81 F.3d 429, 434 (4th Cir. 1996). "Probable cause requires more than 'bare suspicion,' but requires less than evidence necessary to convict." *Porterfield v. Lott*, 156 F.3d 563, 569 (4th Cir. 1998) (internal citations omitted). Reasonable law officers need not "resolve every doubt about a suspect's guilt before probable cause is established." *Torchinsky v. Siwinsky*, 942 F.2d 257, 264 (4th Cir. 1991) (citation omitted). As a result, in order to

prove an absence of probable cause, Plaintiff "must allege a set of facts which made it unjustifiable for a reasonable officer to conclude" Plaintiff was involved in the charged offense. *Brown v. Gilmore*, 278 F.3d 362 (4th Cir. 2002).

In the case at hand, Plaintiff has failed to allege such facts. In his complaint, Plaintiff asserts that Defendant Hensley gave no response to his questioning why he was being arrested, asserts that he does not drink, and asserts that he was wearing black pants as opposed to blue jeans. These criticisms and assertions by Plaintiff do not, however, make it unjustifiable for Defendant Hensley to conclude he was in violation of the Public Drunk Ordinance given Defendant Hensley's personal observations of Plaintiff at the time of the arrest. Defendant Hensley determined he had probable cause to arrest Plaintiff for Public Drunk based upon his observations of Plaintiff being unsteady on his feet, slurring his speech, and having a strong smell of alcohol on his person and breath.

Under the Fourth Amendment, if supported by probable cause, an officer may make a warrantless arrest of an individual in a public place. *U.S. v. Humphries*, 372 F.3d 653, 657 (4th Cir. 2004). Here, an objectively reasonable police officer, placed in the circumstances, had a "reasonable ground for belief of guilt" that was "particularized with respect to the person to be searched or seized." *U.S. v. Humphries*, 372 F.3d 653, 657–658 (4th Cir. 2004) (citing *Maryland v. Pringle*, 540 U.S. 366 (2003)). The totality of the facts and circumstances within Defendant Hensley's knowledge on May 24, 2009, were sufficient to warrant a prudent or reasonable person to believe that Plaintiff had committed or was committing the criminal offense for which he was arrested. As

previously referenced, an anonymous caller reported an intoxicated subject with a weapon whose description matched that of Plaintiff when Defendant Hensley arrived at the dispatched location. Further, Defendant Hensley personally observed Plaintiff to be unsteady on his feet, with slurred speech and a strong smell of alcohol on his person and breath. Based upon this information, Defendant Hensley had probable cause to arrest Plaintiff.

      2.      Search and Seizure

The Supreme Court has long recognized an exception to the Fourth Amendment warrant requirement for searches incident to arrest, whereby law enforcement may search the space within an arrestee's immediate control where he or she might gain access to a weapon or destructible evidence, and on the justification of officer safety and evidence preservation. *See Chimel v. California*, 395 U.S. 752 (1969); *U.S. v. Robinson*, 414 U.S. 218 (1973); *New York v. Belton*, 453 U.S. 454 (1981); *Arizona v. Gant*, --- U.S. ---, 129 S.Ct. 1710 (2009). Although this exception has been recently limited following the Court's holding in *Gant*, *supra*, it clearly still pertains to the search of an arrestee's person following arrest.

Here, Defendant Hensley effected a pat down of Plaintiff's person following his arrest. Additionally, and as previously addressed herein, Defendant Hensley had probable cause for the lawful arrest of Plaintiff for violation of the Public Drunk ordinance. In light of the above, it is clear that Plaintiff has failed to establish an unreasonable or unconstitutional search and seizure of his person following his arrest.

Plaintiff also alleges an unreasonable search or seizure of his vehicle following his arrest on May 24, 2009, by Defendant Hensley. Notwithstanding Plaintiff's contention, the search of his vehicle was lawful as an inventory search conducted pursuant to City of Spartanburg Department of Public Safety policy. Police may conduct an inventory search on a vehicle after lawfully taking custody of it, so long as the search is conducted pursuant to standard police procedures. *South Dakota v. Opperman*, 428 U.S. 364, 376 (1976). The Fourth Circuit has recently held:

> "A proper inventory search is merely an incidental administrative step following arrest and preceding incarceration, conducted to protect the arrestee from theft of his possessions, to protect the police from false accusations of theft, and to remove dangerous items from the arrestee prior to his jailing." *United States v. Banks*, 482 F.3d 733, 739 (4th Cir. 2007) (internal citations and quotation marks omitted). An inventory search, however, must "be conducted according to standardized criteria," such as a uniform police department policy. *Colorado v. Bertine*, 479 U.S. 367, 374 n. 6 (1987). For an inventory search to be lawful, the vehicle searched must be in the lawful custody of the police. "If the vehicle is in lawful custody, the police may inventory the vehicle, if such inventories are routine and conducted pursuant to the standard police procedures, so long as the purpose of the inventory is to secure the car or its contents and not to gather incriminating evidence against the owner." *United States v. Brown*, 787 F.2d 929, 932 (4th Cir. 1986).

*U.S. v. Murphy*, 552 F.3d 405, 412 (4th Cir. 2009), *cert. denied*, 129 S.Ct. 2016 (2009). Following Plaintiff's arrest, several additional officers of the City of Spartanburg Public Safety Department arrived, including Defendant Hensley's supervising Sergeant. The keys to the Plaintiff's vehicle could not be located, and therefore, the vehicle could not be secured at the apartment complex parking lot where Plaintiff had been arrested. Therefore, pursuant to the policy and procedure of the City of Spartanburg Public Safety

Department, a towing service was contacted and an inventory search of Plaintiff's vehicle was initiated. Defendant Hensley did not complete his participation in the inventory search, as he transported the Plaintiff to the Spartanburg County Detention Center for booking, and another officer completed the Motor Vehicle Tow & Inventory Report following the inventory search. The vehicle was thereafter towed from the scene by Southside Towing.

Therefore, the inventory search of Plaintiff's vehicle was lawful and constitutionally permissible given the authority set out herein. As such, Plaintiff's claim for unreasonable search and seizure must also fail.

B.   Claims against SCDC Defendants

1.   Excessive Force

In an excessive force case, a claimant must meet a heavy burden to satisfy the subjective component of the claim; specifically, he must prove that correctional officers applied force "maliciously and sadistically for the very purpose of causing harm" rather than in a good-faith effort to maintain or restore discipline. *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986); *see also Wilkins v. Gaddy*, --- U.S. ----, 130 S.Ct. 1175 (2010). The objective component of an excessive force claim is not nearly as demanding, however, because "[w]hen prison officials maliciously and sadistically use force to cause harm' ... 'contemporary standards of decency are always violated ... whether or not significant injury is evidence. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary

quantity of injury.'" *Wilkins*, 130 S.Ct. at 1179 (quoting *Hudson v. McMillan*, 503 U.S. 1, 7 (1992)).

The Supreme Court has directed that several factors should be balanced in determining whether prison officials acted maliciously and sadistically. These factors include (1) the necessity for the application of force; (2) the relationship between the need for force and the amount of force used; (3) the extent of the injury actually inflicted; (4) the extent of the threat to the safety of the staff and prisoners, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) the efforts taken by the officials, if any, to temper the severity of the force applied. *Whitley*, 475 U.S. at 321.

Here, the SCDC Defendants' use of force was not excessive. It appears their use of force was necessary, in that Plaintiff admits he repeatedly refused to follow their numerous direct orders and continued to ignore their repeated attempts to handle the matter verbally and without the use of force. SCDC Defendants' use of force was also within reason, as the record is clear that each time Plaintiff was sprayed with a small amount of chemical spray initially, and only sprayed again if his behavior escalated with verbal or physical threats. In addition, the record is clear from Plaintiff's visits to Spartanburg Regional that Plaintiff suffered no permanent injury, rather only discomfort in his eyes for a limited time. SCDC Defendants were reasonable in perceiving Plaintiff's defiance in responding to orders, his sudden movements, and his verbal threats as a threat

to the safety to the staff and prisoners. Finally, SCDC Defendants ensured Plaintiff was decontaminated and taken to Spartanburg Regional for evaluation after each incident.

Plaintiff claims he was beaten by "unknown officers" in his complaint and later identifies one of the officers as Defendant Pilgrim. (*See* Pl.'s Opp'n Br. at Entry #95-2). However, Plaintiff has provided no proof whatsoever of such injury. Thus, after weighing the *Whitley* factors, the court finds that Plaintiff's evidence is insufficient to establish SCDC Defendants sadistically or maliciously used force to cause harm. Plaintiff's excessive force claim must therefore be denied.

    2.    Denial of Access to Courts

Plaintiff also alleges a denial of access to the courts claim, based on the alleged lack of a law library. Claims relating to the lack of access to a law library at the SCDC do not raise a cognizable § 1983 claim. Furthermore, Plaintiff's claims relating to the right to a law library at FCDC are foreclosed by Fourth Circuit case law.

The Fourth Circuit has ruled the Constitution of the United States does not require every local jail to have a law library. *See Magee v. Waters*, 810 F.2d 451, 452 (4th Cir. 1987). The holding in *Magee* is based on the knowledge that county jails are generally short-term facilities, wherein "the brevity of confinement does not permit sufficient time for prisoners to petition the courts." *Id.* at 452. Additionally, the right of access to the courts is the "right to bring to court a grievance that the inmate wished to present," and violations of that right occur only when an inmate is "hindered [in] his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343 (1996). In order to make out a prima facie

case of denial of access to the courts, an inmate cannot rely on conclusory allegations; rather he must identify with specificity an actual injury resulting from official conduct. *Cochran v. Morris*, 73 F.3d 1310, 1316 (4th Cir. 1996). In this case, Plaintiff does not allege any specific facts as to how a pending legal case, or any other legal matter, has been adversely affected due to his denial of access to legal materials. Therefore, Plaintiff has failed to state a cognizable claim.

        3.        Qualified Immunity

Defendants also assert that they are entitled to qualified immunity in their individual capacities. The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818.

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for

official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998). As discussed above, Plaintiff has failed to present sufficient evidence to support his constitutional violation allegations. Nevertheless, *assuming arguendo* that Plaintiff has presented sufficient evidence of a constitutional violation, Defendants are entitled to qualified immunity from suit.

In *Maciariello v. Sumner*, 973 F.2d 295 (4th Cir. 1992), the Fourth Circuit further explained the theory of qualified immunity:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

*Maciariello*, 973 F.2d at 298.

In the instant case, Plaintiff has failed to establish any theory of liability upon the part of Defendants, and, furthermore, Plaintiff has failed to establish the existence of any constitutional deprivation. However, if the court were to find that Plaintiff has established some theory of liability upon the part of Defendants, and therefore, the existence of a constitutional deprivation, Defendants are still entitled to qualified immunity. The record before the court shows that as to Plaintiff and the specific events at issue, these

Defendants performed the discretionary functions of their respective official duties in an objectively reasonable fashion. They did not transgress any statutory or constitutional rights of Plaintiff that they were aware of in the discretionary exercise of their respective professional judgments. Thus, to the extent the district judge finds that a constitutional violation occurred, these Defendants are entitled to qualified immunity.

    C.    State Law Claims

Plaintiff has also brought claims pursuant to state law. Having found that Defendants are entitled to summary judgment regarding Plaintiff's constitutional claims, it is recommended that the court decline to exercise supplemental jurisdiction over any claims for relief pursuant to state law. *See* 28 U.S.C. § 1367(c).

IV.    Conclusion

For the reasons discussed above, it is recommended that Defendant Hensley's Motion for Summary Judgment [Entry #69] and SCDC Defendants' Motion for Summary Judgment [Entry #72] be granted and this case be dismissed in its entirety.

IT IS SO RECOMMENDED.

*[signature]*

August 2, 2010                                                  Shiva V. Hodges
Florence, South Carolina                        United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**